UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF LYVITA GOMES, | ) | |
| Deceased, by Alfredo Miranda, | ) | |
| Administrator, | ) | No. 12 CV 4439 |
| | ) | |
| Plaintiff, | ) | Judge Johnson Coleman |
| | ) | |
| vs. | ) | Magistrate Judge Gilbert |
| | ) | |
| COUNTY OF LAKE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUPPLEMENT IN RESPONSE TO CCS DEFENDANTS'
MOTION FOR PROTECTIVE ORDER
FOR NON-PARTY MEDICAL AND MENTAL HEALTH CARE
INFORMATION AND RECORDS**

In response to this Court's order of May 15, 2013 [Dkt #60], and in further response to CCS Defendant's motion for protective order, Plaintiff provides the bases for the Court to order the CCS Defendants to produce, in connection with Plaintiff's *Monell* policy claims, all requested documents containing or revealing communications between non-party Lake County Jail inmates and their therapist providers, with redaction of identifying information.

**Communications Between Inmates and Therapists is Necessary *Monell* Evidence**

Given the circumstances under which Ms. Gomes died as a result of a mere two weeks in Defendants' custody, Plaintiff alleged that Defendants' policies were a moving force in her death. The *Monell* claims against both the CCS Defendants (County VII) and the Lake County Defendants (Count VI) may be proved by evidence that Ms. Gomes' treatment was not an isolated incident, and that the Defendants maintained unconstitutional policies, customs and

practices. *Cosby v. Ward*, 834 F.2d 967, 983 (7th Cir. 1988); *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 303 (7th Cir. 2010).

In *Perez v. City of Chicago*, 2004 U.S. Dist. LEXIS 7415 (N.D. Ill. 2004), where the defendants were denied access to records revealing the plaintiff's family members' communications in group therapy sessions, the defense was not hampered in defending against plaintiff's claims. Here, however, Plaintiff's ability to meet its burden of proof on the *Monell* claims will be seriously impaired, if not defeated, by lack of access to records documenting treatment of other similarly situated inmates. See, Seventh Circuit Court of Appeal Pattern Jury Instructions in Civil Cases, 7.20 Liability of Municipality: Definition of "Official Policy."

Lake County counsel has verbally indicated that within two years of Ms. Gomes' death, inmates were forcibly medicated on approximately twenty (20) occasions. The records of those inmates, including therapist-patient communications, could reveal a wealth of evidence as to Defendants' custom, policy and practice of treating inmates in situations similar to that of Ms. Gomes.

The other issue here is that Defendants have sole access to the requested records, which makes for a very uneven playing field. See, *Mauricio v. Duckworth*, 840 F.2d 454, 458 n. 4 (7th Cir. 1988) (describing the discovery process as creating "a level playing field where rules are in place to ensure equal access to material information"). Further,

> The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. *"Mutual knowledge* of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

Notes of Advisory Committee on Rules, 1983 Amendment (emphasis added).

***Jaffee* Privilege is Not Inelastic or Absolute**

As this Court recognized in its order of May 15, the *Jaffee* court did not define the scope of the privilege. However, *Jaffee* itself provides that the privilege is not inelastic or absolute, stating the Supreme Court was not "delineat[ing] its full contours in a way that would 'govern all conceivable future questions in this area.' [cite omitted]," and indicating "we do not doubt that there are situations in which the privilege must give way," providing an example of where "a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." 518 U.S. 1 at 18 n. 9.

The "*Jaffee*" privilege exists only if there is a legitimate expectation of confidentiality; if no such legitimate expectation of confidentiality exists, there is no privilege. In *Scott v. Edinburgh*, 101 F.Supp.2d 1017, 1020 (N.D. Ill. 2000), where, similar to *Jaffee*, the plaintiff sought therapy records for the shooting police defendant, unlike *Jaffee*, the court ordered production of the therapy records, finding no expectation of confidentiality existed, for the therapist had admonished the defendant that the records would be reviewed by the police chief.

The privilege can be waived if the psychotherapist-patient communication is shared with people beyond the therapist and her employer. See, e.g., *Granger v. McBride*, 2006 U.S. Dist. LEXIS 34689 (N.D. Ind.) (after a patient reported therapist sexual abuse, community mental health center waived privilege when it sent therapist's non-parties' therapy records to counsel and insurer).

As this Court recognized, the privilege does not cover every communication between psychotherapist and patient; only those involving diagnosis, treatment or counseling. *United States v. Schwensow*, 151 F.3d 650, 657 (7th Cir. 1998) (providing address of detox center does

3

not constitute diagnosis, treatment or counseling). And if there is no indication in the record that the communication was in fact made in the course of psychotherapy, then that communication should not enjoy the *Jaffee* privilege. *Boudreau v. Ryan*, 2001 U.S. Dist. LEXIS 12996 (N.D. Ill).[1]

**A *Jaffee* Privilege Does Not Exist in the Context of the Lake County Jail, Or in the Alternative, it Has Been Waived**

This background provides this Court a basis to reconsider that part of its May 15 order where it concluded that communications by non-party inmates to therapists are not subject to disclosure. In the specific context of the Lake County Jail, there is no expectation of confidentiality — a corrections officer is always present when CCS providers see inmates. In other words, every time a therapist and an inmate engage in communication, that communication is made in the presence of someone who is not a therapist. There is thus no privilege; or the privilege may be considered waived by having been made in the presence of someone other than the therapist or her employer.

The psychotherapist-patient privilege is supposed to protect the "atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Jaffee*, 518 U.S. at 10. There is no such atmosphere of confidence and trust in the Lake County Jail, where communications are made in the presence of a uniformed corrections officer whose purpose is to protect the therapist from the patient. In Ms. Gomes' case, when the provider determined that she "refused treatment," both the provider and a

---

[1] Parsing through the records to determine what is in fact a *Jaffee*-protected communication and what is not a *Jaffee*-protected communication will undoubtedly be far more burdensome than producing the records in redacted fashion under a protective order.

corrections officer signed the form. See, e.g., JS 594. That is not the type of communication *Jaffee* hoped to protect.

Those incarcerated at the Lake County Jail likely have not even elected to undergo psychotherapy treatment. Defendants identified individuals to be seen by mental health professionals for the security and safety of the jail. Ms. Gomes, for example, did not seek out psychotherapy treatment. The mental health professionals came to see her because of her behavior and conduct. Incarcerated individuals do not voluntarily seek diagnosis and treatment by mental health professionals at the Lake County Jail.

It is important to further examine what "psychotherapist-patient communication" means in the context of inmates held at Lake County Jail. Documents produced by the Lake County Defendants indicate that while in the medical pod, Ms. Gomes was placed on a disciplinary status, administrative lockdown, for "refusing to complete intake." [JS 688]. Thus, for "refusing" to engage in a process which included divulging her mental health history and whether she was currently at risk for suicide, she lost what minimal privileges she had while in custody. Such records, obtained under threat of punishment, could hardly be the sort of communication to which the Supreme Court extended protection in *Jaffee*.

Additionally, there are issues concerning Ms. Gomes' ability and/or willingness to communicate, and Plaintiff has alleged a policy concerning communication. For non-party inmates who similarly could not or would not communicate with therapists, *Jaffee* should not apply. *Ligas v. Maram*, 2007 U.S. Dist. LEXIS 87853 at *21-23 (N.D. Ill.).

**Redaction of Identifying Information Accommodates any Concern About Confidentiality**

During the May 15 argument, this Court correctly perceived the inapplicability of

*Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 293 (7th Cir. 2004), given the special nature of that case involving a subpoena for late-term abortion records, within the context of the hostility and violence of the anti-abortion movement. Defendants provided no other authority for their contention that redaction will not accommodate concerns about confidentiality.

Redaction is widely used and approved as a means of protecting the confidentiality of health and other sensitive information of parties, non-parties, and government agencies. See, e.g., *Sosnowski v. Wright Medical Technology, Inc.*, 2011 U.S. Dist. LEXIS 88225 (N.D. Ill.) (granting motion to compel, ordering redaction of confidential patient information); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices and Products Liability Litigation*, 2010 U.S. Dist. LEXIS 14093(N.D. Ill.) (ordering redaction of trade secrets, privileged, and otherwise confidential information); *Goldstein v. Colborne Acquisition Co., LLC*, 873 F. Supp. 2d 932, 938 (N.D. Ill.); *United States v. Marzook*, 435 F. Supp. 2d 708 (N.D. Ill. 2006) (classified national security information); *Kampinen v. Individuals of Chi. Police Dep't*, 2002 U.S. Dist. LEXIS 2561 (N.D. Ill.) (police confidential informant information). See also, *Guthrey v. Cal. Dep't of Corr. & Rehab*, 2012 U.S. Dist. LEXIS 89174 at *43-44 n. 6, (ordering production of documents of other religious discrimination complaints, citing cases authorizing redaction of non-party identities).

Defendants may easily redact identifying information of individuals within the requested documents. Once an inmate's name and number is removed from a document, the individual would not be identified and any communications would not be of an extremely private nature. The documents sought involve discovery of what actions Defendants took in response to behavior and conduct of individuals incarcerated at the jail. In other words, Plaintiff seeks information, for example, concerning when Defendants sent other individuals out for medical

6

treatment outside the jail because by the time Ms. Gomes was transferred to an outside hospital it was too late to save her life. Similarly, Ms. Gomes' behavior and conduct interfered with her ability to make decisions about her health and Plaintiff seeks comparable information as to what behavior and conduct on the part of other individuals prompted Defendants to make any different medication decisions for those individuals.

Defendants seek to conceal their practices from exposure in this litigation by hiding behind an alleged confidentiality privilege of incarcerated individuals who have not voluntarily sought diagnosis or treatment at the Lake County Jail. The analogy in *Northwestern Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 929 (7th Cir. Ill. 2004) of an unidentified nude picture of a woman uploaded to the Internet invading that woman's privacy simply does not apply here. Plaintiff seeks evidence of Defendants' patterns and practices not individual identifying or extremely private information about other incarcerated individuals.

**Conclusion**

The documents sought are relevant and probative to Plaintiff's *Monell* claim, and seek information not otherwise available to Plaintiff. Due to the circumstances of any therapist-patient communications in the Lake County Jail, no *Jaffee* privilege exists, or if it ever did, it is waived by the presence of a non-therapist. Furthermore, production pursuant to a protective order and redaction of personal identifying information will adequately accommodate any concerns about confidentiality.

Dated: May 28, 2013                                    Respectfully submitted,

                                                                                             /s/ Jan Susler
                                                                                             Janine L. Hoft
                                                                                             Jan Susler

People's Law Office
1180 N. Milwaukee Avenue
Chicago, Illinois 60642
773/235-0070

Attorneys for Plaintiff