# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF LYVITA GOMES, Deceased, by Alfredo Miranda, Administrator, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Court No.: 12 C 4439 |
| CORRECT CARE SOLUTIONS, et al. | ) ) | Judge Sharon Johnson Coleman |
| Defendants. | ) | |

**MEDICAL DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S WRONGFUL DEATH AND DELIBERATE INDIFFERENCE CLAIMS**

Defendants CORRECT CARE SOLUTIONS, LLC, DR. ROZEL ELAZEGUI, DR. HARGURMUKH P. SINGH, JENNIFER BIBBIANO, RUTH MUURU and EDITH JONES ("Medical Defendants") through their attorneys, ROBERT P. VOGT, DAVID A. BRUEGGEN and WELDON-LINNE & VOGT, move for the entry of order pursuant to Federal Rule of Civil Procedure 50 for judgment as a matter of law on Plaintiff's Wrongful Death and Deliberate Indifference claims. In support thereof, the Medical Defendants state as follows:

## A. RELEVANT LAW

A court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a). The standard for granting judgment as a matter of law "mirrors" the standard for granting summary judgment. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986). There must be more than a mere scintilla of evidence to support the party's

1

claim. *Anderson*, 477 U.S. at 252; *Filipovich v. K&R Exp. Systems, Inc.*, 391 F.3d 859, 863 (7th Cir. 2004). The Court should determine whether there is sufficient evidence upon which the jury could properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. *Anderson*, 477 U.S. at 252.

If the non-movant presents insufficient evidence upon which a reasonable person could properly base a verdict in his favor, judgment as a matter of law for the movant is appropriate. *James v. Milwaukee County*, 956 F.2d 696, 698 (7th Cir. 1992) (citing *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1213 (7th Cir. 1985)). A directed verdict in favor of a defendant is proper if reasonable people, viewing the facts most favorably to the plaintiff, could not conclude that the plaintiff has made out a prima facie case. *Cannon v. Teamsters & Chauffeurs Union*, 657 F.2d 173, 175-76 (7th Cir. 1981).

The Seventh Circuit has held that Illinois' rule that a plaintiff must present expert testimony to establish medical malpractice is not a procedural rule but is instead "substantive" and "part of Illinois law of medical malpractice incorporated into the federal law of this case by 28 U.S.C. §§ 1346(b) and 2674." *Murrey v. United States,* 73 F.3d.1448, 1456 (7th Cir. 1996).

"[P]roximate cause in a medical malpractice case must be established by expert testimony to a reasonable degree of medical certainty, and the causal connection must not be contingent, speculative or merely possible." *Morisch v. United States of America*, 653 F.3d 522, 531 (7th Cir. 2011) (quoting *Johnson v. Loyola Univ. Med. Ctr.*, 384, Ill.App.3d 115, 893 N.E.2d 267, 272 (Ill. App. Ct. 2008). To establish proximate cause, "a plaintiff must satisfy two requirements: cause in fact and legal cause." *LaSalle Bank, N.A. v. C/HCA Dev. Corp.*, 384 Ill.App.3d 806, 828, 893 N.E.2d 949, 970, (Ill. App. Ct. 2008). "[T]o prove cause in fact, a plaintiff must show, within a reasonable degree of medical certainty, that defendants' breach of

2

the standard of care was more probably than not a proximate cause of the resulting injury." *Id.* "[T]o prove legal cause, a plaintiff must also show that 'an injury was foreseeable as the type of harm that a reasonable person would expect to see as a likely result of his or her conduct.'" *Id.*

"Proximate cause is not established where the causal connection between the allegedly negligent act or omission and the injury is contingent or speculative or if the injury would have occurred even in the absence of that act of omission." *Hardnick v. United States of America*, 2009 U.S. LEXIS 53739 at 31-32. (N.D. Ill. 2000).

### B. DEFENDANTS MS. BIBBIANO, MS. MUURU AND MS. JONES ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S WRONGFUL DEATH CLAIM AS PLAINIFF FAILED TO ESTABLISH PROXIMATE CAUSE

Count IX of the Plaintiff's First Amended Complaint seeks recovery from Ms. Bibbiano, Ms. Muuru and Ms. Jones (collectively "MHPs") under an Illinois state wrongful death theory for their alleged deliberate indifference and healing art malpractice. However, the plaintiff has no expert testimony on proximate cause linking the MHPs to Gomes' death. Proximate cause is an essential element of the plaintiff's claim on which the plaintiff bears the burden. *Morisch*, 653 F.3d at 531. Here, during the Plaintiff's case-in-chief, the only expert who offered any opinion regarding the essential element of the proximate cause of Gomes' death was Dr. John Raba.[1]

During direct examination, Dr. Raba offered his views regarding Defendant Dr. Elazegui. Dr. Raba Direct Testimony, p.3, 40, Attached as **Exhibit B**). However, no other witness offered any opinion that the alleged deliberate indifference or medical malpractice of the MHPs was in

---

[1] While the Plaintiff's psychiatry expert, Dr. Gilligan, offered a conclusory causation opinion that Dr. Singh's actions or inactions caused or contributed to Gomes' death, on cross-exam, Dr. Gilligan withdrew any opinions as to the physical cause of Gomes' death instead leaving the issue of causation to an internal medicine physician. Specifically, Dr. Gilligan testified as follows: "Q: As far as Ms. Gomes' medical, physical cause of death, you are going to leave that to someone else, is that fair enough? A: Well, yes. Q: Okay. And you would leave that to an internal medicine physician? A: Yes. As to the medical cause of death." Moreover, Dr. Gilligan never offered any opinions that any actions or inactions of the MHPs caused or contributed to Gomes' death. (Dr. Gilligan Testimony, pp.4 and 67, Attached as **Exhibit A**).

3

any way a proximate cause of Gomes' death. The Plaintiff has failed to provide the requisite expert testimony to causally connect the alleged medical malpractice and alleged deliberate indifference of the MHPs to the death of Gomes. Accordingly, these Defendants are entitled to judgment as a matter of law on Plaintiff's wrongful death allegations set forth in Count IX. *James v. Milwaukee County*, 956 F.2d 696, 698 (7th Cir. 1992).

Not only did the plaintiff fail to offer any expert opinion that the MHPs caused or contributed to Gomes' death, the Plaintiff's social work expert, Joseph Harper, specifically testified that he ***does not know*** if Gomes' care would have been any different even if the MHPs had referred Gomes to the psychiatrist earlier:

> Q: Do you have any evidence that Ms. Gomes would have started eating or drinking if she had seen Dr. Singh on December 23rd or December 22nd or December 21st, any of those days.
>
> A: No, I do not.
>
> Q: All right. The bottom line is that we know what occurred in this case when she saw Dr. Singh, and there's no way of saying that she would have done anything differently had she seen Dr. Singh earlier, would you agree?
>
> A: I would.

Mr. Harper Testimony, p.69, Attached as **Exhibit C**).

There is no evidence that the alleged delay of the MHPs in referring Gomes to see Dr. Singh, the only criticism leveled against the MHPs, had any causal impact on Gomes' death. Therefore, the MHPs are entitled to judgment as a matter of law on Plaintiff's wrongful death claim in Count IX.

### C. **DEFENDANT DR. ELAZEGUI IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE PLAINTIFF'S WRONGFUL DEATH CLAIM AS THE PLAINIFF FAILED TO ESTABLISH PROXIMATE CAUSE TO A REASONABLE DEGREE OF MEDICAL CERTAINTY**

The Plaintiff also seeks recovery from Dr. Elazegui[2] pursuant to a wrongful death theory for his alleged deliberate indifference and medical malpractice. The plaintiff must present evidence of proximate cause to a reasonable degree of medical certainty that is not contingent, speculative or merely possible. *Morisch*, 653 F.3d at 531. The plaintiff's only expert testimony on the proximate cause of Gomes' death is the testimony of Dr. Raba, set forth above.

While Dr. Raba attempted to offer an opinion that Dr. Elazegui's medical malpractice or deliberate indifference caused Gomes' death, he specifically did not offer his own opinion as to the cause of Gomes' death. Instead, Dr. Raba, when asked about the cause of Gomes' death, simply repeated what the coroner said when Dr. Raba testified, "As stated by the coroner, it was complications of starvation and dehydration." (Dr. Raba Direct Testimony, p.10-11).

"Proximate cause is not established where the causal connection between the allegedly negligent act or omission and the injury is contingent or speculative or if the injury would have occurred even in the absence of that act of omission."*Hardnick*, 2009 U.S. LEXIS 53739 at 31-2.

Here, it is undisputed that on December 29, 2011, Gomes was transferred to the hospital and that Gomes' death did not occur until six days later on January 3, 2012 at Vista Medical Center East. (Gilligan Testimony, p.66).

But, the plaintiff has set forth no evidence regarding the six days during which Gomes was hospitalized. The plaintiff's evidence omits any mention of that time period and jumped straight to Gomes' death. Dr. Raba's opinion on proximate cause does the same - skipping the six day evidentiary void to parrot "complications of starvation and dehydration" cause of death offered by a non-witness. Dr. Raba offered no testimony or explanation as to what "complications" allegedly caused Gomes' death. He did not explain whether she suffered these "complications" while incarcerated or during her six day hospital admission. He offered no

---

[2] CCS is only a defendant on a *respondeat superior* basis.

testimony as to how the acts or omissions of Dr. Elazegui caused these nebulous "complications". The plaintiff cannot establish proximate cause "if the injury would have occurred even in the absence of that act of omission." *Hardnick*, 2009 U.S. LEXIS 53739 at 31-2. Dr. Raba's conclusory opinion provides no guidance to the jury.

Claims under 42 U.S.C. § 1983 must be interpreted against the background of tort liability which includes determining causation of damages. *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012).

> Causation is a standard element of tort liability, and includes two requirements: (1) the act must be the 'cause-in-fact' of the injury, i.e., 'the injury would not have occurred absent the conduct'; and (2) the act must be the 'proximate cause,' sometimes referred to as the 'legal cause,' of the injury, i.e., 'the injury is of a type that a reasonable person would see as a likely result of his or her conduct.

*Whitlock*, 682 F.3d at 582-583.

Here, the Plaintiff failed to put forth any evidence to support cause in fact. The Plaintiff's experts have not testified that Gomes' death would not have occurred if Dr. Elazegui complied with the standard of care. Proximate causation requires this Court to analyze the relation between a defendant's conduct and the resulting injury; the when, where, and exactly how that injury occurs is part of the proximate cause question. *Whitlock*, 682 F.3d at 583. In this case, Plaintiff failed to answer any of these proximate cause questions with expert testimony. There is no evidence of when or where the "complications" of starvation and dehydration occurred, at the jail or during the hospitalization. More importantly, plaintiff failed to explain how the death occurred. Where, as here, the plaintiff fails to prove causation, judgment in the defendant's favor is appropriate. *Peretz v. Sims*, 662 F.3d 478, 480 (7th Cir. 2011).

It is uncontested that Gomes refused to eat and drink while at the Lake County Jail. Dr. Raba never offered any opinion that "but for" the alleged acts or omissions of Dr. Elazegui, Gomes would not have died. No expert testimony was offered by the Plaintiff to establish that had Dr. Elazegui acted in accordance with the standard of care, as set forth by Plaintiff's expert, Gomes' death would not have occurred. Therefore, Dr. Raba failed to establish that but for the alleged acts or omissions of Dr. Elazegui, this patient, who refused to eat or drink, would not have died. Plaintiff failed to sufficiently establish the necessary element of cause in fact. *LaSalle Bank, N.A.*, 893 N.E.2d at 970.

Illinois law is also clear that "an expert's opinion is only as valid as the bases and reasons for the opinion" and that "a party must lay a foundation sufficient to establish the reliability of the bases for the expert's opinion." *Torres v. Midwest Development*, 383 Ill. App. 3d 20, 28, 889 N.E.2d 654, 662 (1st Dist. 2008). Here, Dr. Raba simply offered the opinion that the care and treatment of Dr. Elazegui caused or contributed to the death of Gomes without identifying the specific complications of starvation and dehydration that caused her death or how Dr. Elazegui's alleged malpractice caused those complications. Accordingly, there was no factual foundation presented for Dr. Raba's conclusory opinion and Dr. Elazegui is entitled to judgment as a matter of law on the Wrongful Death claim in Count IX.

Incredibly, not only did Dr. Raba not identify the alleged "complications" that caused Gomes' death 6 days after her transfer to the hospital, neither he nor any other expert ever testified about Gomes' care and treatment or her condition during the six days that she was admitted to Vista Medical Center. There is thus a fatal gap in the Plaintiff's case as there was no testimony of Gomes' treatment and condition in the six days prior to her death nor was there any evidence of what actually caused her death (i.e. what complication led to her death and how

those complications caused her death). Without evidence of what the death-causing complication was or how Dr. Elazegui's care and treatment days earlier caused that complication to arise, Plaintiff has failed to establish the requisite cause in fact connecting Dr. Elazegui's care to the unidentified complication and death. The jury will be forced to speculate.

Furthermore, the Seventh Circuit has repeatedly held that in a deliberate indifference case, an inmate must submit ***verifying medical evidence*** showing the detrimental effect of the alleged delay. *Langston v. Peters*, 100 F.3d. 1235, 1240 (7th Cir. 1996); *Martin v. Taylor*, 845 F.2d 1451, 1458 (7th Cir. 1988). Here, Dr. Raba provided no verifying medical evidence to establish how Dr. Elazegui's alleged delay in transferring Gomes' to the hospital proximately caused her death. He simply concluded, without analysis or supporting verifiable medical evidence, that Dr. Elazegui's alleged delayed caused or contributed to Gomes' death. At no time did Dr. Raba offer testimony, substantiated or otherwise, that if Dr. Elazegui transferred Gomes to the hospital sooner, her death would have been avoided. Accordingly, the Plaintiff has failed to establish that Dr. Elazegui's alleged delay caused or contributed to Gomes' death.

Lastly, akin to the case of *Wiedenbeck v. Searle*, 385 Ill.App.3d 289, 895 N.E.2d 1067 (Ill. App. Ct. 2008), judgment for Dr. Elazegui is required because "When there is no factual support for an expert's opinion, the conclusions alone do not create a question of fact." *Id.* at 294. In *Wiedenbeck*, the Appellate Court upheld the entry of judgment on behalf of the defendant physician because there was insufficient evidence of proximate cause. *Id. at 299*. Although the plaintiff in *Wiedenbeck* put forth evidence via a family practice physician and a neurologist that the defendant's failure to order a CT and a neurological consult on November 1, caused the plaintiff to suffer brain damage, the court found that there was no evidence that the defendant's care and treatment caused the plaintiff's injuries or lessened the effectiveness of

plaintiff's subsequent treatment. *Id.* at 299. Importantly, the court found that "Nothing in either of the plaintiff's expert's testimony suggested, however, that an analysis of a CT scan on Thursday would have led to earlier surgical intervention or treatment." *Id.* at 298. The plaintiff's family practice expert could only state with respect to causation that with proper care treatment "would have been sooner, and sooner would have been better." *Id.* at 299.

Finally, Dr. Raba asserts that Dr. Elazegui needed to transfer Gomes to the hospital sooner but he never testified as to what would have taken place at the hospital had Gomes arrived sooner or whether her eventual outcome would have been any different. He never opined that earlier transfer would have led to earlier force feeding or that anything would have prevented her death. Plaintiff's case has a fatal proximate cause gap tying Gomes' death to Dr. Elazegui. Dr. Elazegui is entitled to judgment as a matter of law on Plaintiff's Wrongful Death claim.

### D. **DEFENDANT DR. SINGH IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE WRONGFUL DEATH CLAIM AS THE PLAINIFF FAILED TO ESTABLISH PROXIMATE CAUSE TO A REASONABLE DEGREE OF MEDICAL CERTAINTY**

Count IX of Plaintiff's First Amended Complaint seeks recovery from Dr. Singh pursuant to a wrongful death theory based on his alleged deliberate indifference and medical malpractice. The plaintiff is required to present expert testimony on proximate cause explaining how Dr. Singh's alleged actions and omissions caused Gomes' death. *Morisch*, 653 F.3d at 531. Dr. Raba's conclusory opinions about the cause of Gomes' death refers *only* to Dr. Elazegui. Dr. Raba had no opinion regarding whether any action or omission of Dr. Singh caused or contributed to Gomes' death. Dr. Raba Direct Testimony, p. 3, 40. The only expert witness who offered any testimony that Dr. Singh's actions or omissions caused or contributed to Gomes' death was Dr. Gilligan, the Plaintiff's psychiatry expert.

9

While it is true that Dr. Gilligan initially testified, without explanation, that Dr. Singh's actions of inactions contributed to Gomes' death[3] (Dr. Gilligan Testimony, p.4), on cross examination, Dr. Gilligan testified that he was not offering any opinion as to Gomes' medical cause of death:

> Q: As far as Ms. Gomes' medical, physical cause of death, you are going to leave that to someone else, is that fair enough?
>
> A: Well, yes.
>
> Q: Okay. And you would leave that to an internal medicine physician?
>
> A: Yes. As to the medical cause of death.

Dr. Gilligan Testimony, p.67.

Because Dr. Raba, the Plaintiff's only internal medicine expert, did not offer any causation opinions against Dr. Singh, Dr. Gilligan's deferral to Dr. Raba for any opinions to the cause of Gomes' death leaves the Plaintiff without any evidence that Dr. Singh's actions or inactions caused or contributed to Gomes' death. As a consequence, Dr. Singh is entitled to judgment as a matter of law on Count IX, Plaintiff's wrongful death claim.

Even ignoring Dr. Gilligan's withdrawal of his causation opinion as to Gomes' death, Dr. Gilligan's testimony regarding the cause of Gomes' death suffers from the same fatal flaws as Dr. Raba's opinions. Dr. Gilligan wholly failed to explain his unfounded opinion. On December 29, 2011 Gomes was transferred to the hospital and that Gomes' death did not occur until six days after her transfer on January 3, 2012. Dr. Gilligan Testimony, p.66. However, Dr. Gilligan provided no information or opinion about what occurred during Gomes' six day admission in the

---

[3] Dr. Gilligan testified as follows: "Q: Did you arrive at any opinions about how, if at all, his (Dr. Singh) failure to act affected Ms. Gomes? A: I feel that his failure to act in the ways that I have described contributed to her death." Dr. Gilligan Testimony, p.4.

hospital. Dr. Gilligan's opinion simply leap frogs over the six day void in the evidence to provide a conclusory and baseless opinion on cause of death.

Dr. Gilligan also failed to opine regarding how Dr. Singh's alleged act or omission caused Gomes' death. Dr. Gilligan never addressed "if the injury would have occurred even in the absence of that act of omission." *Hardnick*, 2009 U.S. LEXIS 53739 at 31-2. Dr. Gilligan never offered any opinion that but for the alleged conduct by Dr. Singh, Gomes would not have died. Dr. Gilligan testified that Dr. Singh's failure to act on December 24, 2011, the first day Dr. Singh was involved in Gomes' care, "contributed to her eventual death." Dr. Gilligan Testimony, p.13. However, Dr. Gilligan never explained how this alleged failure to act caused her death nor did he say that had Gomes been transferred to the hospital sooner, her death would not have occurred.

Finally, the plaintiff has wholly failed to submit verifying medical evidence showing the detrimental effect of any alleged delay. *Langston v. Peters*, 100 F.3d. 1235, 1240 (7th Cir. 1996); *Martin v. Taylor*, 845 F.2d 1451, 1458 (7th Cir. 1988). A diagnosis and cause of death standing alone does not constitute verifying medical evidence. Here, Dr. Gilligan provides no verifying medical evidence to establish that Dr. Singh's alleged delay in transferring Gomes' to the hospital proximately caused her death. .

### E. THE MEDICAL DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE DELIBERATE INDIFFERENCE CLAIM

Judgment as a matter of law for the Medical Defendants should be granted because the Plaintiff has not provided the requisite proof to allow the jury to consider whether the Medical Defendants were deliberately indifferent to Gomes' serious medical needs during the 15 days that she was in custody at the Lake County Jail. Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a

conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). It is a total disregard for a prisoner's safety that is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

The question of whether a certain form of treatment should be prescribed "is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Disregard of a serious medical need occurs "only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). The Court "must remain sensitive to the line between malpractice and treatment that is so far out of bounds that it was blatantly inappropriate or not even based on medical judgment … this is a high standard." *King v. Kramer*, 680 F.3d 1013, 1019 (7th Cir. 2012).

It is uncontested that during her 15 day stay at the Lake County Jail, Gomes was assessed by CCS' nursing staff on 22 separate occasions, she was seen by CCS Mental Health Professionals on nine (9) different days, she was examined and treated by Dr. Roz Elazegui on two occasions over a five day period, and seen and examined by Dr. Singh on two occasions over a three day period. In addition, it is undisputed that CCS' staff repeatedly tried to take Gomes vital signs, repeatedly tried to obtain urine samples, repeatedly tried to secure blood samples, repeatedly tried to convince her to cooperate, and repeatedly encouraged her to eat and drink.

This is an extraordinary amount of medical and mental health attention. While the plaintiff and his experts can assert that they would have dome things differently, there is no contest that with the undisputed treatment that was provided, deliberate indifference is absent.

The Medical Defendants are entitled to judgment as a matter of law on the plaintiff's deliberate indifference claims.

In addition, the Plaintiff's evidence during his case-in-chief was insufficient to support a claim that the Medical Defendants were deliberately indifferent. There has been no evidence that any of the Medical Defendants consciously disregarded Gomes' condition. Gomes received an extraordinary amount of care. If medical personnel treats an inmate, this evidence normally establishes a lack of deliberate indifference to an inmate's medical problems. *Petties v. Carter*, 2016 U.S. App. LEXIS 15524 at *10, WL 4631679 (7th Cir. Ill. Aug. 23, 2016); *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000).

Medical malpractice and deliberate indifference proof are not legal equivalents. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. at 106, *Petties*, 2016 U.S. App. LEXIS 15524 at *8, 2016 WL 4631679. Evidence that some medical professionals would have chosen a different course of treatment might establish medical malpractice, but does not support a constitutional claim. *Collignon*, 163 F.3d at 989; *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996).

Dr. Raba may be critical of Dr. Elazegui for holding a belief that Gomes was drinking water (Raba Direct, p. 33) and not expressing heightened concern and advising nurses to watch Gomes more carefully. Dr. Raba Direct Testimony, p. 15, 30. Dr. Raba opined that Dr. Elazegui should have transferred Gomes to the hospital. Dr. Raba Direct Testimony, p. 30. These criticism are consistent with medical malpractice but does not rise to the level that no minimally competent professional would have acted as Dr. Elazegui did.

Plaintiff's psychiatric expert Dr. James Gilligan's testimony that Dr. Singh did not meet the standard of care is not enough to create a factual issue on deliberate indifference sufficient to go to the jury:

> A. I think he failed to meet the standards of psychiatric care that are expected of a psychiatrist. (Gilligan Testimony, p. 4.
>
> A. Given that that was the clinical conclusion he reached, or the clinical conclusions, I feel that his failure to act more decisively to immediately do whatever he could to get her transferred to a facility that would be more capable of dealing with such a desperately ill patient represented a failure to live up to the standards of psychiatric care that are expected. Gilligan Testimony, p. 16.
>
> A. And by failing to act decisively and immediately, he violated the treatment standards set for him by the jail's own policies regarding emergency medical -- or psychiatric treatment. Gilligan Testimony, p.17.
>
> A. I believe that he did violate the standard of care. Gilligan Testimony, p. 19.

Dr. Gilligan's testified that Dr. Singh was trying to help Gomes.

> Q. But Dr. Singh was seeing her for the purpose of trying to convince her to stop her hunger strike; true?
>
> A. That's what his notes indicate.
>
> Q. He was trying to help her?
>
> A. Yes.

The Medical Defendants testified as to all the care they provided, their professional opinions regarding Gomes' status, and their efforts to help Gomes. Multiple witnesses, including the Plaintiff's experts, testified that CCS' personnel respectfully tried to help Gomes. This uncontradicted evidence shows that the Medical Defendants were acting in a manner wholly opposite to deliberate indifference.

14

Because Plaintiff has not brought forth any evidence that would permit the jury to infer deliberate indifference, the Defendants, Dr. Rozel Elazegui, Dr. Hargurmukh P. Singh, Jennifer Bibbiano, Ruth Muuru and Edith Jones, are entitled to judgment as a matter of law.

## F. CONCLUSION

Accordingly, for the reasons set forth above, the Medical Defendants respectfully request and pray that judgment as a matter of law be entered in their favor and against the Plaintiff as to Count II (Deliberate Indifference) and Count IX (Wrongful Death).

Respectfully Submitted,

**WELDON-LINNE & VOGT**

By: /s/ Robert P. Vogt
      Robert P. Vogt

**Weldon-Linne & Vogt**
Attorneys for Defendants CCS, Elazegui, Singh, Bibbiano, Muuru and Jones
20 South Clark Street
Suite 2050
Chicago, Illinois  60603
(312) 236-5151

750-1756 RPV/DAB #6289138

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINIOS
# EASTERN DIVISION

| | |
|---|---|
| ESTATE OF LYVITA GOMES, Deceased, by Alfredo Miranda, Administrator, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Court No.: 12 C 4439<br>) |
| CORRECT CARE SOLUTIONS, et al. | ) Judge Sharon Johnson Coleman<br>) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

TO: Janis Susler
Janine Hoft
Shubra Ohri
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642

I, Robert P. Vogt, certify that on October 21, 2016, I electronically filed **MEDICAL DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S WRONGFUL DEATH AND DELIBERATE INDIFFERENCE CLAIMS**, with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

- **Janis Susler -** jsusler@gmail.com
- **Janine L Hoft -** janinehoft@aol.com
- **Shubra Ohri** - shubraohri@gmail.com

Respectfully submitted,

WELDON-LINNE & VOGT

By: /s/ Robert P. Vogt
       Robert P. Vogt

WELDON-LINNE & VOGT
20 S. Clark Street, Suite 2050
Chicago, Illinois 60603
(312) 236-5151

16